NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL

# OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | ) BAP No. CC-12-1646-DPaTa |
| | ) |
| MELVA ATAYDE, | ) Bk. No.  10-18117-MT |
| | ) |
| Debtor. | ) Adv. Proc. No. 11-01003-MT |
| _____ | ) |
| | ) |
| MELVA ATAYDE, | ) |
| | ) |
| Appellant, | ) |
| | ) |
| v. | ) **M E M O R A N D U M**[1] |
| | ) |
| D. BRANDON FECO; | ) |
| LANE SCOTT YUDELL | ) |
| | ) |
| Appellees. | ) |
| _____ | ) |

Argued and Submitted on November 22, 2013
at Pasadena, California

Filed - December 9, 2013

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Charles E. Rendlen III, [Visiting] Bankruptcy Judge,
and Honorable Maureen Tighe, Bankruptcy Judge, Presiding

Appearances: Jerome Zamos of the Law Offices of Jerome Zamos argued
for Appellant Melva Atayde; Russ W. Ercolani of the
Ercolani Law Group argued for Appellees D. Brandon Feco
and Lane Scott Yudell.

Before:  DUNN, PAPPAS and TAYLOR, Bankruptcy Judges.

---

[1]     This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may have
(see Fed. R. App. P. 32.1), it has no precedential value. See 9th
Cir. BAP Rule 8013-1.

1

Unhappy with the bankruptcy court's refusal to impute liability to one Appellee and the amount of damages, attorneys' fees and costs awarded in her favor based upon the other Appellee's violation of § 110,[2] debtor appealed. We AFFIRM.

## I.   FACTS

Sometime near the turn of the present century, Melva Atayde acquired real property in Granada Hills, California, which she used as her personal residence ("Residence"). On January 4, 2010, after Ms. Atayde had become delinquent on her payments on the Residence, the servicer of the loan secured by a First Deed of Trust on the Residence filed a Notice of Default. Ms. Atayde failed to cure the default, and the servicer filed a Notice of Sale on April 13, 2010. The sale was scheduled to take place on July 6, 2010 ("Initial Sale Date"). Between April 13, 2010 and the Initial Sale Date, Ms. Atayde attempted unsuccessfully to negotiate with the secured lender to retain ownership and possession of the Residence by obtaining a further loan.

Prior to the Initial Sale Date, Ms. Atayde contacted her friend, Andrew Rowe, who claimed to be a short sale expert. Mr. Rowe referred Ms. Atayde to Lane Scott Yudell, a real estate agent who was an employee of KNB Capital, Inc. dba So. Cal. Properties ("KNB"). On July 3, 2010, the Saturday of the Independence Day weekend, Ms. Atayde and Mr. Yudell commenced

---

[2]   Unless specified otherwise, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

telephone communications. At that time, Mr. Yudell suggested that Ms. Atayde could file a bankruptcy case to avoid the imminent foreclosure sale. At Ms. Atayde's insistence, Mr. Yudell sent Ms. Atayde the necessary bankruptcy petition forms which she completed and which Mr. Yudell's assistant, Kate Templeton, filed on Ms. Atayde's behalf[3] on Tuesday, July 6, 2010, the first business day after the holiday weekend.

The bankruptcy documents filed by or on behalf of Ms. Atayde were incomplete. The bankruptcy court sent Ms. Atayde several notices of the need to correct the deficient filing to avoid dismissal of her case. When no further documents were filed, the bankruptcy case was dismissed on July 23, 2010.

Thereafter, the Residence was foreclosed upon and sold. The sale price was $143,000, which was applied against the outstanding liens on the Residence. Those liens included two trust deeds, unreleased liens, and taxes aggregating more than the $143,000 foreclosure sale price.

On January 4, 2011, Ms. Atayde commenced an adversary proceeding in the bankruptcy court, seeking damages in the amount of $300,000, representing statutory damages and alleged actual damages for her loss of the Residence, pursuant to § 110 and pursuant to

---

[3] Mr. Yudell and Ms. Templeton testified that Ms. Templeton delivered the forms to the bankruptcy court on behalf of Ms. Atayde because Ms. Atayde claimed to be incapable of delivering them herself. Ms. Atayde testified that Mr. Yudell not only sent her the forms, but informed her that his office would ensure the completed forms were filed with the bankruptcy court.

Cal. Bus. & Prof. Code § 10159.2.[4]

In addition to Mr. Yudell, Ms. Atayde named D. Brandon Feco as a defendant in the adversary proceeding. Mr. Feco is the owner of KNB and was Mr. Yudell's supervising real estate broker. At the conclusion of the two-day trial, the bankruptcy court found that Mr. Feco did not prepare any portion of the bankruptcy documents, that he never advised Ms. Atayde to file a bankruptcy case, that he never spoke to Mr. Yudell or any other person about Ms. Atayde, her Residence, or the bankruptcy case until he received the summons for the adversary proceeding, that KNB does not prepare bankruptcy petition forms, and that Mr. Feco never authorized or instructed any agent working for KNB to advise any client to file a bankruptcy case. Based on those findings, the bankruptcy court concluded that Mr. Feco was not a petition preparer for purposes of liability under 11 U.S.C. § 110 and awarded judgment in his favor on the complaint.

By contrast, the bankruptcy court found that Mr. Yudell helped prepare Ms. Atayde's bankruptcy petition papers by (1) advising her to file a bankruptcy case, (2) maintaining correspondence with her throughout the bankruptcy process, and (3) instructing Ms. Templeton to deliver the completed bankruptcy

---

[4] Cal. Bus. & Prof. Code § 10159.2 was alleged as the basis upon which to impute liability to Mr. Yudell's employer. Because Mr. Yudell has paid Ms. Atayde all amounts awarded by the bankruptcy court, we do not address Ms. Atayde's asserted error based on the bankruptcy court's failure to find that employer liable for damages under § 110, other than to comment that any related issues are moot. See Discussion, infra at paragraph B. No further reference to this statute is made in this Memorandum.

4

petition forms to the bankruptcy court for filing. The bankruptcy court further found that the opportunity to earn a commission by executing a short sale of the Residence constituted compensation within the contemplation of § 110(a)(1). Based on those findings, the bankruptcy court determined that Mr. Yudell met the statutory definition for a bankruptcy petition preparer, that he had violated § 110(e) and (g), and that he had engaged in the unauthorized practice of law, a fraudulent act under § 110.

Notwithstanding its determination that Mr. Yudell had violated § 110, the bankruptcy court concluded that Mr. Yudell's conduct did not cause Ms. Atayde to lose the Residence, where it was not clear that Ms. Atayde could have kept the Residence had her case not been dismissed. Ms. Atadye lacked funds to cure the default if she proceeded in a chapter 7 case, she had failed to qualify for a modification of the mortgage loan, and because her job was ending, she had no way to fund a chapter 13 plan to cure the arrears. Further, no evidence, other than Ms. Atayde's testimony, was presented to establish that the value of the property exceeded the obligations against it for purposes of showing damages through a loss of equity. The bankruptcy court expressly found Ms. Atayde's testimony not credible on that issue. The bankruptcy court determined that the only damages Ms. Atayde had proven were the loss of $299.00 she paid as a filing fee and $1.00 for the cost of copies. Finally, because Ms. Atayde did not prove that Mr. Yudell had acted as a petition preparer in any other instance, more global damages were not warranted.

5

The bankruptcy court ordered Mr. Yudell to pay Ms. Atayde the amount of $300 actual damages and $2,000 in statutory damages.

The order that awarded judgment against Mr. Yudell also authorized Ms. Atayde to file a motion for an award of attorneys' fees and costs. That motion was heard by a bankruptcy judge who did not try the adversary proceeding, but to whom the adversary proceeding was assigned and who had conducted the majority of the pretrial proceedings.[5]

After admonishing counsel for Ms. Atayde for prosecuting "the most over-tried matter I've ever seen on a 110 violation," recounting the days of proceedings involving both bankruptcy judges involved in the adversary proceeding, reciting that there was no evidence of causation for the "phenomenal" amount of damages that were sought and that a wrong defendant was named, the bankruptcy court awarded $3,000 in attorneys' fees and $390 in costs to Ms. Atayde.

Ms. Atayde timely appealed both the judgment of the trial court and the subsequent order awarding attorneys' fees and costs.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(1) and (b)(2)(O). We have jurisdiction under 28 U.S.C. § 158.

---

[5] Trial of the adversary proceeding was conducted by a visiting judge.

6

## III.  ISSUES

Whether the bankruptcy court erred in its award of damages resulting from Mr. Yudell's violation of § 110.

Whether the bankruptcy court erred when it concluded that Mr. Feco had no liability for his employee's actions.

Whether the appeal is moot as to Mr. Feco.

## IV.  STANDARDS OF REVIEW

We review an award of damages for an abuse of discretion. See Eskanos & Alder, P.C. v. Leetin, 309 F.3d 1210, 1215-16 (9th Cir. 2002).  Similarly, a bankruptcy court's award of attorney fees is reviewed for abuse of discretion. Cal. Emp't Dev. Dep't v. Taxel (In re Del Mission Ltd.), 98 F.3d 1147, 1152 (9th Cir. 1996).

We must affirm the bankruptcy court's fact findings unless we conclude that they are "(1) 'illogical,' (2) 'implausible,' or (3) without 'support in inferences that may be drawn from the facts in the record.'" United States v. Hinkson, 585 F.3d 1247, 1262 & n.20 (9th Cir. 2009)(en banc).  "Under the 'clear error' standard, we accept findings of fact unless the findings leave 'the definite and firm conviction that a mistake has been committed by the trial judge.'"  Wolkowitz v. Beverly (In re Beverly), 374 B.R. 221, 230, aff'd in part & dismissed in part, 551 F.3d 1092 (9th Cir. 2008), citing Latman v. Burdette, 366 F.3d 774, 781 (9th Cir. 2004).  We review de novo the bankruptcy court's conclusions of law and its interpretations of statutes and rules. Clear Channel Outdoor, Inc. v. Knupfer (In re PW, LLC), 391 B.R. 25, 32 (9th Cir. BAP 2008).

## V. DISCUSSION

The Bankruptcy Code defines the term "bankruptcy petition preparer" at § 110(a)(1) to mean "a person, other than an attorney for the debtor or an employee of such attorney under the direct supervision of such attorney, who prepares for compensation a document for filing. . . ." The term "'document for filing' means a petition or any other document prepared for filing by a debtor in a United States bankruptcy court . . . in connection with a case under this title." Section 110(a)(2).

The bankruptcy court ruled that Mr. Yudell was a bankruptcy petition preparer within the definition of the statute. Mr. Yudell did not appeal that determination by the bankruptcy court; in fact, he concedes it for the purposes of this appeal. See Appellee's Opening Brief at 5:24-26. Accordingly, we do not address whether the limited actions of Mr. Yudell in the circumstances of this case satisfy the provisions of § 110(a).

### A. Section 110(i)(1)

This appeal is before us because Ms. Atayde is not satisfied with the damages the bankruptcy court awarded to her. Our focus, therefore, is on § 110(i)(1) and its application to the record on appeal.

Section 110(i)(1) provides:

> If a bankruptcy petition preparer violates this section or commits any act that the court finds to be fraudulent, unfair, or deceptive, on the motion of the debtor . . . , and after notice and a hearing, the court shall order the bankruptcy petition preparer to pay to the debtor –
> (A) the debtor's actual damages;

8

            (B) the greater of –
                (i) $2,000; or
                (ii) twice the amount paid by the debtor to the
    bankruptcy petition preparer for the preparer's services;
    and
            (C) reasonable attorneys' fees and costs in moving for
    damages under this subsection.

    The bankruptcy court found Ms. Atadye had incurred actual damages in the amount of $300 and ordered Mr. Yudell to pay her that amount pursuant to § 110(i)(1)(A). Ms. Atadye did not pay Mr. Yudell for his services as a bankruptcy petition preparer. Accordingly, the bankruptcy court awarded Ms. Atayde the $2,000 maximum statutory damages provided for in § 110(i)(1)(B)(i). Finally, the bankruptcy court determined that $3,000 was a reasonable attorneys' fee for seeking damages under § 110(i)(1), and ordered Mr. Yudell to pay that amount to Ms. Atayde pursuant to § 110(i)(1)(C). The aggregate amount Mr. Yudell was ordered to pay to Ms. Atayde for his violation of § 110 was $5,300. That amount has been fully paid.

    Ms. Atayde asserts on appeal that the damages awarded to her pursuant to §§ 110(i)(1)(A) and (C) are inadequate.

        1.   Actual Damages

    In the complaint, Ms. Atayde asserted the right to recover actual damages. This right was also asserted in Ms. Atayde's Motion to Recover Damages. As the party seeking relief she bore the burden to prove the amount of her actual damages. Generally speaking, an award of actual damages is intended as compensation for an actual injury. Further, as noted by the bankruptcy court, the "actual damages must be reasonably certain to have been caused in fact by

9

the conduct of the party from whom they are sought." Memorandum at 9:11-13 (citing In re JTS Corp., 305 B.R. 529, 555 (Bankr. N.D. Cal. 2003)).

Ms. Atayde asserted that her actual damages included the loss of equity in the Residence. To establish a loss of equity, Ms. Atayde was required to establish that the Residence was worth more than what she owed against the Residence. The only evidence of value presented by Ms. Atayde was her opinion that the Residence was worth $300,000. Ms. Atayde asserts that her opinion was admissible pursuant to Rule 701 of the Federal Rules of Evidence.[6] She is correct, however, Rule 701 and her opinion do not deprive the bankruptcy court of the ability to evaluate and weigh the evidence.

Contrary to Ms. Atayde's position on appeal, it is not evident in the record that the bankruptcy court rejected her opinion of value, although it certainly could have in light of the fact that within days of filing the bankruptcy petition, she executed a listing agreement for the purpose of selling the Residence for

---

[6]     Fed. R. Evid. 701 provides:

Opinion Testimony by Lay Witnesses

If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

10

$180,000. Rather than value, however, the bankruptcy court focused on the lack of evidence regarding the encumbrances recorded against the Residence, finding that the real estate mortgage was $143,000, the amount bid at the foreclosure sale, and that the "legal title report showed additional liens outstanding and taxes which were not released." The bankruptcy court found Ms. Atayde's testimony that these encumbrances had been released not credible in the absence of documentary evidence. The mere fact that Ms. Atayde sought out and was working with a short sale expert belies the notion that she had equity in the Residence. In the absence of evidence establishing the amount of the encumbrances against the Residence, the bankruptcy court did not err when it determined that Ms. Atayde had not met her burden to prove loss of equity as actual damages.

Ms. Atayde also alleged "general damages that flowed out of her pre-Christmas eviction." The bankruptcy court determined that Ms. Atayde had not established a causal link between the defective bankruptcy petition and the foreclosure of the Residence. It is true that Ms. Atayde lost the benefit of the automatic stay when her bankruptcy case was dismissed. However, an automatic stay is not permanent. On the record before the bankruptcy court, Ms. Atayde would not have been able to withstand a motion for relief from the automatic stay. She had no funds to cure her mortgage default, such that her reprieve in chapter 7 was limited in any event. She had no permanent employment which would have enabled her to qualify either for a modification of her mortgage or to fund a chapter 13 plan. Ms. Atayde simply did not have the resources to save her Residence.

11

An incomplete bankruptcy filing and the resulting dismissal do not change that fact. Without a causal link between the dismissal of her bankruptcy case and the foreclosure of her Residence, Ms. Atayde is not entitled to damages for the inconvenience, embarrassment, or emotional distress of an eviction during the Christmas holiday season or at any other time.

### 2. Reasonable Attorneys' Fees and Costs

Ms. Atayde sought $14,590 in attorneys' fees and costs incurred in seeking an award of damages under § 110(i)(1). In light of the fact that her proven actual damages were $300, and her statutory damage award was $2,000, an attorney fee award of more than forty-eight times her actual damages could not be considered reasonable, especially in light of the court's repeated admonitions that an award of actual damages would require causal connection to Mr. Yudell's actions.

"Substantively, both the Supreme Court and our cases have emphasized the discretionary nature of the court's determination of the number of hours reasonably expended." Dawson v. Washington Mut. Bank, F.A. (In re Dawson), 390 F.3d 1139, 1152 (9th Cir. 2004), quoting Cunningham v. Cnty. of L.A., 879 F.2d 481, 484 (9th Cir. 1988). In Dawson, the plaintiffs claimed more than $50,000 in attorneys' fees, yet prevailed on only one of the twenty issues they litigated. They ultimately were awarded $200 in total damages. The bankruptcy court determined that plaintiffs' attorney fee request was "grossly disproportionate to the cost of litigating the issue in question." In re Dawson, 390 F.3d at 1152. On appeal, the Ninth

12

Circuit affirmed the bankruptcy court's exercise of discretion in awarding only 5% of the fees requested.

The Dawson analysis supports the bankruptcy court's exercise of discretion to award $3,000 of the $14,590 attorneys' fees requested in this case. See also Unsecured Creditors' Committee v. Puget Sound Plywood, Inc. (In re Puget Sound Plywood, Inc.), 924 F.2d 955, 958-59 (9th Cir. 1991)(affirming limitation of attorneys' fees to one-third of the ultimate recovery, noting the obligation of counsel to "exercise billing judgment," and further noting that attorneys do not have "free reign to run up a tab without considering the maximum probable recovery").

B.    The Appeal is Moot as to the Liability of Mr. Feco.

In addition to her assertions that the bankruptcy court erred in its award of damages, Ms. Atayde asserted that the bankruptcy court erred when it determined that Mr. Feco's status as KNB's owner did not make him liable for the conduct of KNB's employee, Mr. Yudell. We need not reach that issue, because the orders awarding damages and attorneys' fees to Ms. Atayde, as we are affirming them here, have been satisfied in full by Mr. Yudell's payment on or about March 18, 2013. Because no greater judgment will be entered in this matter, it is of no import whether Mr. Feco is named as an obligor.

## VI.    CONCLUSION

The bankruptcy court did not abuse its discretion when it determined that Ms. Atayde did not meet her burden of proving that she had equity in the Residence at the time it was foreclosed. The

13

bankruptcy court further did not abuse its discretion when it determined that Ms. Atayde had not established a causal link between Mr. Yudell's actions in assisting her in filing an incomplete bankruptcy case and the actual foreclosure of the Residence and her ultimate eviction. Nor did the bankruptcy court abuse its discretion in making its award of attorneys' fees.

Because the bankruptcy court's monetary judgment was satisfied in full by Mr. Yudell, Ms. Atayde's appeal is moot as to the issue of whether Mr. Feco is jointly liable.

Based on the foregoing conclusions, we AFFIRM.