**In re Miguel A. DIAZ, Debtor.**

**No. 6:02–bk–05591–ABB.**

United States Bankruptcy Court,
M.D. Florida,
Orlando Division.

Sept. 30, 2009.

Barbra R. Joyner, Law Office of Barbra R. Joyner PA, Orlando, FL, for Debtor.

## *MEMORANDUM OPINION*

ARTHUR B. BRISKMAN, Bankruptcy Judge.

This matter came before the Court on the Debtor's Motion for Sanctions (Doc. No. 172) and the Supplement to Debtor's

Motion for Sanctions (Doc. No. 187) filed by Miguel A. Diaz, a/k/a Miguel A. Diaz–Collado, the Debtor herein ("Debtor"), seeking an award of sanctions against the Florida Department of Revenue ("Florida DOR") and the Commonwealth of Virginia, Department of Social Services ("Virginia DSS") (collectively, "Respondents") for violations of the automatic stay of 11 U.S.C. Section 362(a) and the discharge injunction of 11 U.S.C. Section 524(a). Respondents filed a Motion to Strike Supplement (Doc. No. 188) and a Motion for Reconsideration of the Order entered on July 29, 2009 (Doc. No. 195).

The evidentiary hearing on the Motion for Sanctions commenced on January 21, 2009 and concluded on April 1, 2009; the Debtor, his counsel, counsel for Respondents, and Laurie K. Weatherford, the Chapter 13 Trustee ("Trustee"), appeared. An evidentiary hearing on the Supplement was held on June 29, 2009 at which the Debtor, his counsel, counsel for the Trustee, counsel for Florida DOR, and counsel for Virginia DSS appeared. The parties agreed the Motion for Sanctions is ready for determination.

The Motion for Sanctions is due to be granted for the reasons set forth herein. The Court makes the following Findings of Fact and Conclusions of Law after reviewing the pleadings and evidence, hearing live testimony and argument, and being otherwise fully advised in the premises.

## FINDINGS OF FACT

### Background: Prepetition Events

The Debtor is a pediatrician. He was formerly married to Maribel Diaz–Bieberach, f/k/a Maribel Diaz ("Diaz–Bieberach"), and they resided in the Commonwealth of Virginia. Two children were born of the marriage. The Debtor and Diaz–Bieber-ach divorced in May 1986 pursuant to a Decree a Vinculo Matrimoni entered by the Circuit Court for the City of Alexandria, Virginia ("Virginia State Court") in *Maribel Diaz v. Miguel A. Diaz*, In Chancery No. 16523. The Decree provides the Debtor shall pay to Diaz–Bieberach "spousal support" of $200.00 per month and "child support" of $500.00 per month.

The Decree sets forth support payment arrearages would be automatically withheld from the Debtor's earnings pursuant to Virginia statutory law. The Virginia Division of Child Support Enforcement is the division of the Virginia DSS authorized to enforce child support orders and to collect and disburse child support payments.

The Debtor defaulted on his support payment obligations and the Virginia State Court entered an Order in November 1989 granting judgment of $25,900.00 in favor of Diaz–Bieberach and against the Debtor for "support arrearages." The Virginia State Court directed the Debtor to pay $200.00 per month towards the arrearages and reaffirmed his ongoing obligation to pay $500.00 per month for child support. The Virginia State Court reduced the spousal support payments to $1.00 per month because Diaz–Bieberach was employed and no longer in need of spousal support. The Order provides: (i) the support payments would be automatically withheld from the Debtor's earnings pursuant to Virginia statutory law; (ii) and "support obligations as they become due and unpaid create a judgment by operation of law." [1]

The Debtor relocated to Florida and opened a pediatrics practice, Miguel A. Diaz M.D., P.A., in Bartow, Florida. He was issued a Florida driver's license on August 16, 2003 with an expiration date of

---

1. Debtor's Ex. A.

August 31, 2009.[2] He is self-employed through his practice and employs no other physicians. The practice is the Debtor's sole source of income.

The Circuit Court of the Tenth Judicial Circuit in and for Polk County, Florida ("Florida State Court") entered an Order in March 1996 directing the Domestic Relations Department of the Florida State Court to establish an account for the receipt and disbursement of the support payments ordered by the Virginia State Court.[3] The Florida State Court, pursuant to Florida's Uniform Reciprocal Enforcement of Support Act, entered an Income Deduction Order ordering the Debtor to make regular income deductions to the Domestic Relations Department totaling $706.25 per month consisting of $1.00 for spousal support, $500.00 for ongoing child support, $200.00 "to be applied towards the existing arrearage," plus a Clerk's fee of $5.25.[4]

Florida DOR assigned collection case number 1061639045 to the matter. Child Support Enforcement is the division of Florida DOR authorized to enforce child support orders and to collect and disburse child support payments. The Florida State Court transmitted the March 1996 Order to Virginia DSS. Respondents, having reciprocal enforcement powers pursuant to Florida and Virginia statutory law, are co-enforcers of the Debtor's support obligations. Respondents are state governmental units.

### Bankruptcy Case Events

The Debtor filed this bankruptcy case on May 24, 2002 ("Petition Date"). He is represented by Barbara R. Joyner ("Joyner"), who is an experienced bankruptcy attorney. This case is governed by the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure as they were in effect on the Petition Date. The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 provisions do not apply.

The Debtor listed the Child Support Distribution Unit of the Florida DOR in Schedule E as having a disputed unsecured priority claim of $40,000.00 for "child support arrearage" (Doc. No. 1). The Matrix included two mailing addresses for Florida DOR, the P.O. Box 8500 address and its Bankruptcy Unit at P.O. Box 6668, Tallahassee, Florida 32314–6668 ("Bankruptcy Unit Address").

Notice of the Debtor's bankruptcy filing was issued by the Bankruptcy Noticing Center to Florida DOR at both addresses on May 29, 2002 pursuant to the Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors, & Deadlines (Doc. No. 2). The Notice advised parties of the existence of the automatic stay setting forth in large bold-face type **"CREDITORS MAY NOT TAKE CERTAIN ACTIONS"** and stating:

> In most instances, the filing of the bankruptcy case automatically stays certain collection and other actions against the debtor and the debtor's property . . . If you attempt to collect a debt or take other action in violation of the Bankruptcy Code, you may be penalized. Consult a lawyer to determine your rights in this case.

The Notice was received by Florida DOR.

The Debtor filed an original Chapter 13 Plan on June 10, 2002 (Doc. No. 4) which listed Florida DOR as a priority unsecured creditor for a debt of $40,000.00 and provided for monthly payments to the Florida DOR for sixty months totaling $40,000.00.

---

**2.** Debtor's Ex. J.

**3.** Debtor's Ex. A.

**4.** *Id.*

The Plan was served on Florida DOR by mail on June 10, 2002. The first Plan payment was due on July 14, 2002.

Florida DOR, through its counsel Gordon L. Kiester ("Kiester"), filed three claims in the Debtor's case:

(i) Claim No. 3 for an unsecured priority claim of $6,152.88 for "child support" was filed on August 12, 2002. Claim No. 3 appears to have been filed in error. A Final Judgment of Support unrelated to the Debtor was attached as supporting documentation.

(ii) Claim No. 4 (amending Claim No. 3) for an unsecured priority claim of $67,047.45 for "child support" was filed on August 19, 2002.

(iii) Claim No. 5 (amending Claim No. 4) for an unsecured priority claim of $67,047.45 was filed on September 3, 2002. Claim No. 4 is identical to Claim No. 3 except Claim No. 4 contains the Debtor's correct Social Security Number.

Each proof of claim contains a section for indicating whether the claim includes any additional charges. Respondents did not indicate or delineate any additional charges. Respondents failed to file with Claim No. 4 and Claim No. 5 any supporting documentation as required by the Federal Rules of Bankruptcy Procedure.

Each claim designated Kiester as Florida DOR's counsel. Kiester regularly appears before this Court as counsel for Florida DOR and is experienced in bankruptcy matters. Kiester filed a Notice of Appearance and Request for Service on September 6, 2002 (Doc. No. 18) listing the Bankruptcy Unit Address as Florida DOR's address of record.

The Debtor filed on October 22, 2002 an Objection to Claim No. 5 (Doc. No. 20) ("Claim Objection") asserting the claim overstated the child support arrearages

and the maximum arrearage amount was $47,746.49 pursuant to the Monthly Statement of Account issued by Florida DOR. The Monthly Statement of Account (Doc. No. 20) set forth an "Arrears" "Total Owed" of $47,746.49 as of July 11, 2002. The statement includes the provision "DOR court cost[s] and interest are not included on statement." The Debtor requested Florida DOR's claim be reduced to $47,746.49.

The first page of the Claim Objection contained a negative notice provision set within a bold box giving Florida DOR thirty days to respond:

### NOTICE OF OPPORTUNITY TO OBJECT AND FOR HEARING

Pursuant to Local Rule 2002–4, the Court will consider this motion, objection, or other matter without further notice or hearing unless a party in interest files an objection within thirty (30) days from the date of service of this paper. If you object to the relief requested in this paper you must file your objection with the Clerk of the Court . . . and serve a copy on the Debtor's attorney . . .

If you file and serve an objection within the time permitted, the Court will schedule a hearing and you will be notified. If you do not file an objection within the time permitted, the Court will consider that you do not oppose the granting of the relief requested in the paper, will proceed to consider the paper without further notice or hearing, and may grant the relief requested.

The Debtor served the Claim Objection on Florida DOR on October 22, 2002.

Florida DOR did not respond to the Claim Objection. An Order was entered on December 31, 2002 (Doc. No. 37) finding the Claim Objection had been properly served on all parties in interest and the matter was unopposed. The Order sus-

tained the Claim Objection and reduced Florida DOR's claim to $47,746.49.

The December 31, 2002 Order was served on Florida DOR at its addresses of record. Florida DOR did not seek reconsideration or appeal of the Order. The December 31, 2002 Order is a final, non-appealable order of this Court. Florida DOR had an allowed unsecured priority claim of $47,746.49 pursuant to the December 31, 2002 Order.

### *Plan Confirmation, Discharge, and Closing*

The Plan confirmation process was lengthy due to a dispute between the Debtor and the IRS regarding the amount of the secured portion of the IRS' claim and the valuation of the Debtor's pediatric medical practice. A multitude of Plan-related hearings were held from December 2002 through February 2005.

The initial confirmation hearing was scheduled for December 17, 2002 pursuant to the Notice of Chapter 13 Confirmation Hearing (Doc. No. 19), which provided:

> Creditors are advised that the payment amounts and frequency of payments as described in the debtor's plan will become effective upon confirmation of the plan unless the affected creditor files an objection to confirmation within **20 days** after the date of this notice.

The Notice was served on all creditors, including Florida DOR, on October 10, 2002.

Florida DOR did not file an objection to the Plan. Kiester appeared at the initial confirmation hearing on December 17, 2002 (Doc. No. 34). The thirty-day response period for the Debtor's Claim Objection had expired as of December 17, 2002, but the Order sustaining the Objection had not yet been entered. Kiester did not address the Claim Objection or raise any objection to the Plan.

The Debtor filed an Amended Chapter 13 Plan on January 23, 2003 (Doc. No. 44) ("Amended Plan") amending, among other things, Florida DOR's priority unsecured claim amount to $47,746.49 in conformity with the Order sustaining the claim objection. The Amended Plan provided for payment of $47,746.49 to Florida DOR through monthly payments over fifty-eight consecutive months commencing on July 14, 2002. The Amended Plan was served on Florida DOR on January 24, 2003.

The Amended Plan was unopposed. It was confirmed by the Order entered on March 27, 2003 (Doc. No. 55) ("Confirmation Order"). The Confirmation Order set forth in Exhibit A an allowed priority unsecured claim of $47,746.49 for Florida DOR. The Trustee served the Confirmation Order on all parties in interest, including Florida DOR, on April 1, 2003. Florida DOR did not seek reconsideration or appeal of the Confirmation Order.

The Debtor modified the Amended Plan to address mortgage and IRS asset valuation issues (Doc. Nos. 77, 99). Those issues were not relevant to Florida DOR and did not impact Florida DOR. All other provisions of the Amended Plan and Confirmation Order remained in full force and effect.

The Debtor's income earned from his medical practice was essential to his ability to make Plan payments. His income constituted property of the estate. He completed his Plan in November 2005. Florida DOR received and accepted Plan distributions totaling $47,746.49 on its allowed claim (Doc. No. 169; Debtor's Ex. F, Trustee's Payment History). The Trustee filed a Notice of Completed Plan and Request for Order Granting the Debtor's Discharge on November 28, 2005 (Doc. No. 166). The Notice provided:

*Any creditor wishing to object to the discharge of the Debtor for any reason, must file an Objection with the Court within 30 days of the date of this Notice.*

The Notice was served on all creditors and parties in interest, including Florida DOR.

No objections were filed. The Debtor was granted a Discharge on November 29, 2005 pursuant to the Discharge of Debtor After Completion of Chapter 13 Plan (Doc. No. 167) ("Discharge Order"). The Discharge Order advised parties of the discharge injunction in large bold-face underlined type:

*"Collection of Discharged Debts Prohibited"*

The discharge prohibits any attempt to collect from the debtor a debt that has been discharged. For example, a creditor is not permitted to contact a debtor by mail, phone, or otherwise, to file or continue a lawsuit, to attach wages or other property, or to take other action to collect a discharged debt from the debtor. . . . A creditor who violates this order can be required to pay damages and attorney's fees to the debtor.

The Discharge Order was issued to the Florida DOR by mail and electronic transmission at its addresses of record on December 1, 2005 (Doc. No. 168).

The Chapter 13 Trustee filed her Final Report and Account (Doc. No. 169) setting forth Plan disbursements totaling $47,746.49 were made to and received by Florida DOR on its allowed claim. The Final Report reflects a balance of "$0.00" owed to Florida DOR. No objections to the Final Report were filed and the Final Report was approved by the Order entered on April 11, 2006 (Doc. No. 170).

The provisions of the confirmed Plan bound the Debtor and all creditors. Florida DOR's allowed claim of $47,746.49 was paid in full through the Plan and satisfied. The case was closed on April 11, 2006.

### Reopening of the Case

The Debtor filed the Motion for Sanctions on December 4, 2008 and served it on Florida DOR at its address of record and on Virginia DSS at 2342 Plank Road, Fredericksburg, Virginia 22401. This case was reopened on December 12, 2008 to address the Motion for Sanctions (Doc. No. 174). All pleadings and notices relating to the Motion for Sanctions were served on Florida DOR and Virginia DSS.

Frederick F. Rudzik, who is Assistant General Counsel for Florida DOR, and Kiester have appeared representing Florida DOR and Virginia DSS jointly in this sanctions matter. Their pleadings are joint submissions of Florida DOR and Virginia DSS (Doc. Nos. 186, 188, 195).

The Debtor asserts Florida DOR and Virginia DSS willfully violated the automatic stay and the discharge injunction by issuing collection letters and suspending the Debtor's Florida driver's license for alleged child support arrearages. The Debtor requests an award of sanctions. He requests: (i) compensatory damages of $10,000.00 for attorneys' fees and costs, emotional distress, inconvenience, and lost wages; and (ii) "punitive damages" of "$10,000.00 per violation of law."

Respondents contend in response: (i) the Debtor's Motion must be dismissed pursuant to the Eleventh Amendment of the United States Constitution; (ii) there has been no stay violation which caused injury to the Debtor; (iii) the discharge injunction does not apply because the underlying debt was nondischargeable; and (iv) the interest accruing on the child support debt survived the discharge and the Debtor remained liable for such interest. Respondents appear to raise in their post-hearing brief a due process challenge to the December 31, 2002 Order sustaining

the Debtor's Claim Objection asserting no hearing was held on the Claim Objection and no adversary proceeding to determine dischargeability was instituted.

The Trustee has an interest in this matter because its determination will impact other Chapter 13 cases. She filed a post-hearing brief in which she takes no position on the Debtor's sanctions request, but requests the Court "recognize the need for full and complete disclosure by creditors in order to allow the Trustee to fulfill her obligations to the Court, the debtor(s), and to the creditor(s) in all cases." (Doc. No. 182, p. 5) Respondents have an obligation in a Chapter 13 case to put the debtor on notice as to what amount he is expected to pay to comply with the requirements of 11 U.S.C. Section 1322(a)(2), including any interest accumulating on its claim. The failure to make such disclosure "would allow the creditor to ambush the debtor with additional fees that were not disclosed." (Doc. No. 182, p. 4).

### *Event Chronology*

The following post-petition and post-discharge events involving the Debtor, his counsel, Florida DOR, and Virginia DSS are relevant to the determination of this matter.

***May 8, 2004:*** Florida DOR sent a letter to the Debtor titled "Notice of Report to Consumer Reporting Agencies" stating the Debtor had overdue child support obligations of $1,669.40 as of May 7, 2004 and the delinquency would be reported to the credit reporting agencies if not paid or contested.[5]

The Debtor faxed the letter to Joyner and she telephoned Revenue Specialist Rosa Lee at the number set forth in the letter for Florida DOR's General Enforcement Division. Joyner advised Lee of the pending bankruptcy case and collection efforts must cease. Lee indicated Florida DOR personnel would call Joyner within three business days. Florida DOR did not contact Joyner.

***May 27, 2004:*** Joyner telephoned Kiester's administrative assistant and requested the Florida DOR cease and desist its collection action against the Debtor.

***September 23, 2004:*** Florida DOR issued a Notice of Intent to Suspend Driver License/Vehicle Registration(s) to the Debtor stating he had child support delinquencies of $2,669.40 and the Florida DOR was authorized to request the suspension of his driver license and the registration of his motor vehicles.[6] The Debtor, within twenty days, was required to: (i) pay the delinquency in full; (ii) contact the Florida DOR and negotiate a payment plan; or (iii) contest the suspension action by filing a petition in the State Court. The Notice concluded: "If you fail to take the action listed ... we will request the Department of Highway Safety and Motor Vehicles to suspend your driver license and vehicle registration of all vehicles owned by you."

The Debtor faxed the Notice to Joyner on September 28, 2004. Joyner faxed a letter to Kiester, with a copy of the Notice, stating:

> Following is a notice of intent to suspend Dr. Diaz' driver's license. Please note that Dr. Diaz is paying these arrears through a Chapter 13 bankruptcy, Case No. 02–05591–6B3, in Orlando. Would you please ask the Dept. to cease and desist collection efforts? Please advise. Thanks.[7]

---

5. Debtor's Ex. B.

6. Debtor's Ex. C.

7. *Id.*

Kiester contacted Joyner and assured her collection efforts would cease and desist immediately.

***November 29, 2005:*** The Discharge Order was entered and issued to Florida DOR. The automatic stay expired upon the entry of the Discharge Order and the discharge injunction arose. The Debtor received no further communications from Florida DOR or Virginia DSS for almost two years.

***October 30, 2007:*** Virginia DSS issued a letter to the Debtor stating he owed past due child and/or spousal support of $27,119.00.[8] The letter advised him if payment in full was not made in thirty days the debt would be: (i) referred for collection by Administrative Offset and/or Federal Tax Refund Offset; (ii) reported to consumer reporting agencies; and (iii) certified to the State Department and the Secretary of State would refuse to issue a passport to the Debtor and could revoke, restrict or limit any previously issued passport.

***December 13, 2007:*** Florida DOR issued a Notice of Non–Payment to the Debtor stating he had past due child support obligations and he had to pay $2,030.83 by December 28, 2007 to "resolve this past due amount."[9]

The Debtor made several attempts to contact Florida DOR to discuss the collection letters and his Chapter 13 discharge. His attempts were unsuccessful and he engaged R. Lawrence Heinkel ("Heinkel") as co-counsel to assist him. Heinkel is an experienced bankruptcy attorney.

***January 23, 2008:*** Heinkel sent a letter via facsimile to Florida DOR advising Florida DOR of his representation of the Debtor, identifying the Plan payments made to Florida DOR, and requesting Florida DOR contact him.[10] He enclosed a copy of the Trustee's payment disbursement record reflecting disbursements made to Florida DOR.

***January 27, 2008:*** Florida DOR issued a Final Notice of Non–Payment to the Debtor stating he had failed to pay the past due amount of $2,030.83 offering him "one last opportunity to clear the account or to establish a written agreement for repayment."[11] The letter advised if payment was not received in fourteen days "the Department will have no alternative but to aggressively pursue administrative and/or judicial enforcement actions to collect the past due amount."

***February 13, 2008:*** Florida DOR issued a Notice of Intent to Suspend Driver License/Vehicle Registration(s) to the Debtor stating he had a child support arrearage of $2,030.83 and he had twenty days in which to pay the delinquency in full, enter into a negotiated payment plan, or contest the suspension action.[12]

***February 15, 2008:*** An Income Deduction Order was entered by the Circuit Court of the Tenth Judicial Circuit in and for Polk County, Florida directing the present and subsequent employers of the Debtor to deduct from his income $500.00 per month for ongoing support and $200.00 per month "to be applied towards the existing arrearage or public assistance obligations."[13] Florida DOR instituted proceedings in the Florida State Court that resulted in the entry of the Income Deduction Order.

---

8. Debtor's Ex. D.

9. Debtor's Ex. E.

10. Debtor's Ex. F.

11. Debtor's Ex. G.

12. Debtor's Ex. H.

13. *Id.*

*February 22, 2008:* The Debtor received the February 13, 2008 Notice and Income Deduction Order and sent the documents to Heinkel via facsimile.

*March 24, 2008:* Heinkel had a telephone conversation with Evelyn Cintron ("Cintron"), an employee of Florida DOR in its Lakeland Service Center, and requested the Florida DOR cease and desist its collection actions.

*March 25, 2008:* Heinkel sent a letter to Cintron confirming she was diligently working with Virginia DSS to resolve the collection actions and again requesting the collection actions be stopped.[14] He requested she confirm by March 27, 2008 the matter had been fully resolved.

*April 9, 2008:* Cintron sent a fax to Heinkel confirming the Debtor's driver's license had been suspended and had been reinstated on March 27, 2008:

> Mr. Heinkel when we placed the general enforcement override we stopped the DL action. I am enclosing DL information to show you that the DL was reinstated on 03272008. I am enclosing the screen shot showing that the DL was reinstated by DHSMV on 03272008 and I am enclosing proof a general enforcement override was done. I hope this helps. Thank you and have a nice day.[15]

Cintron provided a copy of Florida Department of Highway Safety and Motor Vehicles ("DHSMV") records relating to the Debtor's driver's license stating "SUSPENSION" and "SUSP: VIO 322.058 F.S. SUPPORT DELQ." The records sets forth the Debtor's license was "RESTORED: 03/27/08" and "EFFECTIVE: 4/10/08."

The phrase "VIO 322.058 F.S." refers to Section 322.058 of the Florida Statutes, which authorizes the DHSMV, upon the receipt of notice of a delinquent support obligation, to suspend the driver's license and vehicle registration of the person who has a delinquent support obligation. Florida DOR caused the Debtor's driver's license to be suspended.

The date on which the suspension of the Debtor's driver's license arose was not provided. The suspension could have occurred on March 3, 2008, which was twenty days from the delinquency payment deadline of February 13, 2008 set forth in the Florida DOR's Notice of Intent to Suspend Driver License/Vehicle Registration(s).[16]

Heinkel had ongoing communications with Cintron regarding resolution of the remaining enforcement actions.

*April 30, 2008:* Cintron sent a fax to Heinkel stating:

> I am enclosing for your review the fax sent to our Clerk of Court to close this case and a copy of letter sent to other State Virginia in reference to our closure action on this case. Thank you.[17]

Cintron, with her second fax, provided a copy of a fax dated April 30, 2008 from Florida DOR to "DRD Caseworker" stating:

> Please close Case 639601017277CA with Miguel Diaz as the noncustodial parent and Maribel Bieberach as the custodial parent. This case is based on another state[']s order and we are closing our case due to noncooperation from Virginia for information. This case was administratively registered and not judicially registered so we can proceed with case closure. Your help in this matter

---

14. Debtor's Ex. I.

15. Debtor's Ex. J.

16. Debtor's Ex. H.

17. Debtor's Ex. K, p. 1.

would be greatly appreciated. Thank you.[18]

Cintron provided a copy of the Child Support Enforcement Transmittal #2—Subsequent Actions dated April 30, 2008 regarding the Debtor which was issued to Virginia DSS. It requested "Case Closure" and stated:

It has been over 30 days and the information we requested has not been received. *We will be closing our case.* We do not collect interest[s] for other states. In order to collect this you must get case into court and adjudicate the arrears. At that point you can then request that we register your order. Thank you.[19]

The Debtor and his counsel believed, based upon Cintron's communications, the enforcement matter had been fully resolved with Florida DOR and Virginia DSS.

*July 4, 2008:* The United States Department of the Treasury issued a notice to the Debtor stating it had intercepted and seized a refund of $604.35 to be applied to a delinquent debt for "child support" owed to Virginia DSS.[20]

*July 8, 2008:* Heinkel faxed a letter to Virginia DSS advising Virginia DSS of the Debtor's bankruptcy case and disputing any alleged child support debt.[21] He enclosed a copy of the Discharge Order.

*July 14, 2008:* Gary P. Webb ("Webb"), the Senior Assistant Attorney General for Virginia, sent a response letter to Heinkel stating: "DCSE's records indicate that the arrearage owed is $27,119.92 as of this date, not including the tax refund offset."[22] He listed the Code of Virginia statutes governing tax offset disputes and requested Heinkel provide him with copies of the Debtor's Plan or Discharge Order.

*July 21, 2008:* Heinkel faxed a letter to Webb stating $47,746.49 had been paid to Florida DOR through the Plan and requesting him to confirm what sums were paid to Virginia and whether Virginia was attempting to collect interest.[23] He enclosed a copy of the Plan and the Discharge Order. Heinkel received no response.

*August 25, 2008:* Heinkel left a voice mail message for Webb and faxed him a letter requesting he confirm Virginia had closed its child support case against the Debtor and would be refunding to the Debtor all monies received in 2008 from IRS refund interceptions.[24] Neither Virginia DSS, nor any Virginia agency, responded to Heinkel's communications.

*October 31, 2008:* Virginia DSS issued a collection letter to the Debtor stating he owed past due child support of $27,119.00 and the debt "will remain subject to Federal Tax Refund Offset, Administrative Offset, and/or passport certification until it is paid in full."[25]

*December 4, 2008:* The Debtor filed the Motion for Sanctions and served it on Florida DOR and to Webb at the Virginia DSS.

*May 22, 2009:* The United States Department of the Treasury issued a notice to the Debtor stating it had intercepted and seized a joint tax refund of $4,277.65

---

18. Debtor's Ex. K, p. 2.

19. Debtor's Ex. K, p. 3.

20. Debtor's Ex. L.

21. *Id.*

22. Debtor's Ex. M.

23. Debtor's Ex. N.

24. Debtor's Ex. O.

25. Debtor's Ex. P.

to be applied to a delinquent debt for "child support" owed to Virginia DSS.

### Analysis

#### Sovereign Immunity

Respondents assert they are cloaked with sovereign immunity which bars the Debtor's sanctions proceeding. Respondents may not assert sovereign immunity. This sanctions proceeding is the type of proceeding necessary to effectuate the Court's *in rem* jurisdiction. Any Eleventh Amendment sovereign immunity has been statutorily abrogated and waived. Respondents waived any sovereign immunity by filing Claim Nos. 3, 4, and 5. Respondents, by filing the claims, elected to be treated like any other creditor. They accepted the benefits of the Chapter 13 bankruptcy process and committed themselves to its consequences.

#### Motion for Reconsideration and Attorneys' Fees

The Court entered an Order on July 29, 2009 (Doc. No. 192) finding the attorney's fees and costs the Debtor incurred through his engagement of Joyner are relevant to the determination of the Motion for Sanctions and cause existed for reopening the evidence regarding such fees and costs. The Order directed Joyner to file and serve on Respondents a detailed Affidavit setting forth her fees and costs, and provided Respondents an opportunity to object to the Affidavit.

Joyner filed and served an Affidavit (Doc. No. 192) setting forth she incurred costs of $45.00 relating to a transcript fee and incurred fees of $6,195.00 from November 14, 2008 through August 3, 2009 representing 24.60 hours billed at the hourly rate of $250.00. Respondents filed the Motion for Reconsideration (Doc. No. 195) asserting:

(i) Fee awards are limited to $125.00 per hour pursuant to federal statutory provisions.

(ii) "[A]ny attorney fees claimed due and owing by the Debtor cannot be used as an element of damages to establish liability" for either a stay or discharge injunction violation and the evidence cannot be reopened.

(iii) Respondents have not been provided the opportunity of cross-examination.

(iv) "[T]he Debtor had the burden in its case in chief, to establish all the elements of its case and it is patently unfair" to reopen the evidence.

The Equal Access to Justice Act ("EAJA"), referenced in Section 106(a)(3) of the Bankruptcy Code, limits attorney fee awards to $125.00 per hour. The United States Court of Appeals for the Eleventh Circuit ("Eleventh Circuit") has not definitively determined whether the EAJA fee limitation of Section 106(a)(3) and the corollary punitive damages prohibition apply in matters where a state governmental agency has waived sovereign immunity by filing a proof of claim.

This Court, in keeping with its decisions and those issued by the United States District Court for the Middle District of Florida, Orlando Division ("District Court"), finds the fee limitation and punitive damages prohibition of Section 106(a)(3) of the Bankruptcy Code are not applicable to this matter. Section 106(a)(3) is inapplicable and/or not viable due to judicial nullification.

The Debtor testified during the trial of this matter he incurred attorneys' fees and costs. Respondents had an opportunity to cross-examine him, but did not cross-examine him regarding damages. The Court is authorized to reopen the evidence where proper cause exists. The Debtor incurred additional attorney's fees and costs post-

hearing due to the parties being granted leave to file post-hearing briefs. Proper cause existed to reopen the evidence to allow Joyner to file a fee and cost affidavit. The Respondents' Motion for Reconsideration is due to be denied.

### Collateral Estoppel, Res Judicata, and Due Process

Respondents contend the Debtor owed a child support debt greater than $47,746.49 during the bankruptcy case and a non-dischargeable delinquency exists post-discharge. They did not present any information regarding the purported delinquency. They did not specify what amounts were not included in Claim No. 5, the amount of the post-discharge delinquency, the basis for such delinquency, or an accounting of the assorted delinquency amounts contained in their various collection letters. They presented no documentary evidence. Their sole evidence consisted of the examination of the Debtor and Heinkel.

Respondents are attempting to relitigate the adjudication of the Claim Objection, the confirmation of the Plan, and the satisfaction of Claim No. 5 through the Debtor's fulfillment of the Plan. The doctrines of collateral estoppel and res judicata bar Respondents from relitigating these matters.

### Collateral Estoppel

The issues raised by Respondents in this sanctions proceeding are identical to the issues actually litigated and decided in the Claim Objection adjudication, Plan confirmation, and case closing proceedings. The Debtor timely objected to Claim No. 5 and his Claim Objection was unopposed. Claim No. 5 was adjudicated to be an unsecured priority claim for $47,746.49 based upon Respondents' failure to substantiate the asserted debt of $67,047.45 and Florida DOR's Monthly Statement of Account for July 11, 2002 which set forth the "Total Owed" was $47,746.49. Respondents did not contest the December 31, 2002 Order fixing the claim amount at $47,746.49.

The resolution of the Claim Objection was foundational to all subsequent case events. The Claim Objection adjudication fixed the amount of Respondents' priority unsecured claim and resulted in an allowed claim of $47,746.49. This allowed claim amount was included in the Debtor's Plan which provided for payment in full of the allowed claim. The Plan was adjudicated and was confirmed without opposition by Respondents.

The Debtor fulfilled the Plan by paying each of his creditors what they were entitled to receive pursuant to their allowed claims and Plan treatment. He was granted a discharge. Respondents' claim was paid in full through the Plan. The Trustee issued her Final Report reflecting disbursements totaling $47,746.49 had been made to and received and accepted by Florida DOR. The Discharge Order and the Trustee's Final Report were unopposed. The Trustee's Final Report was approved by the April 11, 2006 Order. She was discharged and the estate was closed pursuant to the April 11, 2006 Order.

The adjudication of the Claim Objection was a critical component of the Debtor's case from which key events flowed. The adjudication was critical and necessary to the entry of the December 31, 2002 Order and subsequent Orders. The adjudication of the Plan was critical and necessary to the entry of the Confirmation Order. The entry of the Discharge Order and Order Approving the Trustee's Final Report were based upon the adjudication of the Claim Objection and confirmation of the Plan.

The Debtor had the burden of proof in the Claim Objection and confirmation proceedings. He has the burden of proof in this sanctions proceeding. The standard of proof in the Claim Objection and confirmation proceedings is at least as stringent as the standard in the pending litigation.

Respondents had a full and fair opportunity to litigate the Claim Objection, confirmation of the Plan, discharge, and closing of the case. They had numerous opportunities to contest the Claim Objection, Plan, Confirmation Order, Trustee's Final Report, and the Discharge Order, but they did not participate. The Claim Objection, Plan, Plan modifications, Plan Notices, each Plan-related hearing notice, and Confirmation Order were served on Florida DOR. Respondents did not respond or appear with the exception of Kiester's appearance at the December 17, 2003 initial confirmation hearing. Kiester made no further appearance after that hearing.

### Res Judicata

The December 31, 2002 Order fixing the claim amount at $47,746.49, Confirmation Order, Order Approving Trustee's Report, and Discharge Order all have res judicata effect. The Orders constitute prior judgments on the merits rendered by a Court of competent jurisdiction. The parties involved in those Orders are identical to or in privity with the parties involved in this sanctions proceeding. The prior and present causes of action are the same, namely, claim allowance, confirmation of the Plan, Plan completion, and discharge.

### Due Process

Respondents' contention they were denied a hearing on the Objection is without merit. A hearing on a claim objection is not required by the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure. This Court employs, pursuant to Local Rule 2002–4 of the Local Rules for the United States Bankruptcy Court for the Middle District of Florida ("Local Rules"), a negative notice procedure regarding claim disputes whereby the party objecting to a claim must include in its objection a negative notice provision. An evidentiary hearing is scheduled when a claimant responds to a claim objection. No evidentiary hearing is scheduled where a claimant fails to file a response. The matter is reviewed by the Court on the papers and an order is issued.

The Claim Objection was appropriately addressed and resolved by the claim objection process. Respondents were afforded due process.

### Automatic Stay Violations

The automatic stay of 11 U.S.C. Section 362(a) arose by operation of law on the Petition Date and remained in full force and effect throughout the duration of this case until the Discharge Order was entered. The automatic stay is a fundamental protection and integral to the fresh start afforded by bankruptcy. Respondents did not request relief from the automatic stay. The automatic stay barred Respondents from taking any action to collect, assess, or setoff from property of the estate a prepetition claim against the Debtor.

Florida DOR issued two collection letters to the Debtor while the automatic stay was in effect. The May 8, 2004 letter demanded payment of an alleged child support delinquency of $1,669.40 and threatened to report the delinquency to the consumer reporting agencies. The September 23, 2004 letter demanded payment of an alleged child support delinquency of $2,669.40 and threatened to suspend the Debtor's driver's license and vehicle registrations. The Debtor did not pursue sanctions against Respondents in 2004 for their stay violations because the

collection actions stopped and he believed the matter was resolved.

Respondents assert the collection letters do not violate the stay because they do not constitute actions against estate property. The collection letters are broad in scope. They demand payment of purported delinquent child support. They threaten negative reporting to the consumer reporting agencies and suspension of the Debtor's driver's license and vehicle registrations. The letters are not aimed at specific property or exclude property of the estate. They implicate property of the estate, including the Debtor's income, which was essential to fund his Plan. The Debtor's income became property of the estate on the Petition Date and remained property of the estate throughout the pendency of his case. The Debtor established the collection letters encompassed property that constituted property of the estate. Respondents violated the automatic stay on May 8, 2004 and September 23, 2004 by issuing the collection letters.

Respondents' violations of the automatic stay were willful. Florida DOR received actual notice of the bankruptcy case shortly after the Petition Date. It filed claims and a notice of appearance and appeared at the Debtor's initial confirmation hearing in 2002. It received numerous filings, notices, and Orders throughout 2002, 2003, and 2004. Respondents were aware the Debtor's case was active and the automatic stay was in effect when it issued the collection letters in 2004. Respondents intended the actions which violated the stay. They knowingly and intentionally violated the automatic stay. Their actions were egregious. They acted in bad faith. Respondents are in contempt of Court.

Sanctions are due to be imposed against Respondents, jointly and severally, for their violations of the automatic stay. There are three separate and distinct grounds for the imposition of sanctions. Sanctions are due to be imposed against Respondents pursuant to the Court's statutory authority of Sections 362(k) and 105(a) of the Bankruptcy Code and its inherent powers to redress bad faith conduct.

### Discharge Injunction Violations

The discharge injunction arose upon entry of the Discharge Order and enjoined any and all acts to collect a discharged debt. Respondents received and accepted payment in full of their allowed claim of $47,746.49 through Plan disbursements. Any purported delinquency owed to Respondents over and above the allowed claim amount was discharged.

Respondents committed multiple ongoing violations of the discharge injunction. Each collection letter issued by Respondents, each instance where Respondents caused the interception of the Debtor's tax refunds, the entry of the Income Deduction Order, and the suspension of the Debtor's driver's license, constitutes a separate violation of the discharge injunction. The discharge violations specifically include:

(1) October 30, 2007 collection letter issued by Virginia DSS.

(2) December 13, 2007 collection letter issued by Florida DOR.

(3) January 27, 2008 collection letter issued by Florida DOR.

(4) February 13, 2008 collection letter issued by Florida DOR.

(5) Income Deduction Order entered on February 15, 2008.

(6) Initiation of the suspension of the Debtor's driver's license.

(7) Interception of the Debtor's tax refund on July 4, 2008.

(8) October 31, 2008 collection letter issued by Virginia DSS.

(9) Interception of the Debtor's tax refund on May 22, 2009.

Each day the Debtor's driver's license was suspended constitutes a separate violation of the discharge injunction. The license was suspended for forty-nine days from March 3, 2008 through April 20, 2008. Each of these acts by Respondents·constitutes an attempt to collect a satisfied discharged debt from the Debtor.

The non-dischargeable nature of a child support debt does not insulate Respondents from the discharge injunction. They voluntarily presented three claims. Claim No. 5 was adjudicated and paid through the Chapter 13 process. The allowed claim was paid in full and no deficiency existed. Had the allowed claim not been paid in full through the Plan, but partially paid, for example, on a *pro rata* basis as with many student loans in Chapter 13 cases, a non-dischargeable debt balance would have existed that survived the discharge.[26]

Respondents received notice of the Debtor's discharge through communications from the Court, the Debtor, and Debtor's counsel. Respondents knew their allowed claim had been fully paid and satisfied. They knew the statutory discharge arose on November 29, 2005. Respondents intended the actions which violated the discharge injunction. Respondents' repeated violations of the discharge injunction were willful.

The Discharge Order, December 31, 2002, March 27, 2003, and April·11, 2006 Orders are Orders of this Court necessary to effectuate the Debtor's fresh start. Respondents, by voluntarily consenting to the jurisdiction of this Court, received the benefits of the bankruptcy process and were bound by these Orders. Respondents willfully violated and are in contempt of the Discharge Order, and the Orders entered on December 31, 2002, March 27, 2003, and April 11, 2006.

Respondents' behavior was intentional, egregious, and extreme. Their repeated attempts to collect a debt that had been fully paid and satisfied through the Plan were vexatious, wanton, and oppressive. Respondents, by filing their claims, voluntarily chose to participate in the Debtor's bankruptcy case and subjected themselves to the jurisdiction of this Court. They received the benefits of the bankruptcy process and were required to abide by the bankruptcy rules.

Respondents did not abide by the rules. They received and accepted payment in full of their allowed claim. They knew the discharge injunction was in effect as of November 29, 2005. Two years later, Respondents wanted more than their allowed claim. They blatantly and willfully ignored the discharge injunction and the Orders of this Court and relentlessly pursued the Debtor from October 2007 through May 2009. They persisted even with the sanctions matter pending against them. Respondents acted in bad faith.

Sanctions are due to be imposed against Respondents, jointly and severally, for their willful, bad faith violations of the discharge injunction pursuant to the Court's statutory contempt powers of Section 105(a) of the Bankruptcy Code and its inherent powers.

### Actual Damages

Respondents committed two willful violations of the automatic stay and fifty-eight separate violations of the discharge injunction. Their retention of the intercepted

---

**26.** Student loan debts, except where undue hardship exists, are nondischargeable pursuant to 11 U.S.C. Section 523(a)(8).

income tax refunds constitute ongoing willful violations of the discharge injunction. They are in contempt of the automatic stay, the discharge injunction, and several Orders.

The Debtor has suffered actual damages as the direct result of Respondents' willful, intentional, and contemptuous behavior. His actual damages include: (i) significant emotional distress, aggravation, and inconvenience; (ii) attorney's fees and costs; and (iii) the intercepted income tax refunds.

### Aggravation, Emotional Distress, and Inconvenience

The Debtor's significant aggravation, emotional distress, and inconvenience are readily apparent and do not require the presentation of medical evidence. Respondents' conduct was so egregious and extreme it would ordinarily be expected to cause significant aggravation, emotional distress, and inconvenience.

The Debtor is entitled to nominal damages for Respondents' stay violations. Respondents issued two letters in violation of the stay; they took no further action in violation of the stay and the Debtor did not file a sanctions motion. He is entitled to actual damages in the amount of $250.00 per automatic stay violation, for a total award of $500.00. The Debtor is entitled to substantial damages for Respondents' violations of the discharge injunction. He is entitled to actual damages of $29,000.00, consisting of $500.00 per discharge injunction violation. He is entitled to a total award of $29,500.00 for actual damages for the significant aggravation, emotional distress, and inconvenience he suffered as a direct result of Respondents' willful stay and discharge violations.

27. Debtor's Ex. K.

### Attorneys' Fees and Costs

The Debtor incurred attorneys' fees and costs as a direct result of Respondents' actions. He incurred attorney's fees of $6,195.00 and costs of $45.00 for services provided by Joyner. Her fees consist of 24.60 hours billed at the hourly rate of $250.00. The Debtor paid Heinkel a retainer of $750.00. Heinkel expended eight hours on this matter billed at the hourly rate of $250.00. The Debtor incurred attorney's fees of $2,000.00 and costs of $0.00 for services provided by Heinkel.

The standard reasonableness criteria established by the United States Court of Appeals for the Fifth Circuit govern the fee and cost determination. Applying the criteria, Joyner's fees and costs and Heinkel's fees are reasonable.

### Intercepted Tax Refunds

Respondents caused the IRS to intercept and remit to Respondents the Debtor's income tax refunds of $604.35 in July 2008 and $4,277.65 in May 2009. The first interception occurred two and a half years after the Debtor had received his discharge and the second interception occurred three and a half years post-discharge. The second interception occurred after the trial of this matter had concluded and while this matter was under advisement.[27]

Respondents' allowed claim had been fully paid and satisfied as of November 2005 and they were not entitled to any further payment. Respondents were not entitled to the intercepted funds. The Debtor, in July and August 2008, requested Respondents provide an accounting of all intercepted funds and refund those amounts to him.[28] Respondents did not provide an accounting or refund the money.

28. Debtor's Exs. L, M, O.

Respondents filed a Motion to Strike (Doc. No. 188) requesting the Debtor's Supplement be stricken on the grounds the Debtor had not been granted leave to supplement the Motion for Sanctions and "the instant facts do not relate directly to the matters plead." An evidentiary hearing on the Supplement was held on June 29, 2009 at which the Debtor, his counsel, counsel for the Trustee, and Respondents' counsel appeared.

Respondents continued to willfully violate the discharge injunction while this sanctions matter was pending. They intercepted funds in May 2009 for payment of a debt that had been fully paid and satisfied and continued to wrongfully retain the funds intercepted in 2008. The Debtor's Supplement pertains directly to the sanctions matter and his request Respondents be directed to turn over the intercepted funds is due to be granted.

Respondents' continuing failures to account for the intercepted funds and to return the intercepted amounts of $604.35 and $4,277.65 to the Debtor constitute ongoing willful violations of the discharge injunction. Respondents knew the discharge injunction was in place when they caused the interceptions to occur and they continue to withhold funds with the knowledge of the discharge injunction. Their actions were and continue to be intentional.

The Debtor has suffered actual damages of $4,882.00 as a direct result of such willful violations of the discharge injunction. Additional actual damages of $4,882.00 are due to be awarded to the Debtor pursuant to Sections 524(a) and 105(a) of the Bankruptcy Code and the Court's inherent powers.

### Unsupported Damages Requests

The Debtor requests an award of compensatory damages of $10,000.00. He asserts he "lost more than sixty hours of work" addressing this matter and, due to being a solo medical practitioner, had to close his medical practice when he attended the hearings on the matter. The Debtor did not quantify the value of his lost work. He did not establish any damages relating to his loss of work.

The Debtor asserts his current wife, Doris E. Diaz, suffered emotional distress as a result of the IRS' seizure of their joint tax refund of $4,277.65. Doris E. Diaz did not appear in this matter and no evidence was presented regarding such allegation. He did not establish any damages suffered by his wife.

### Sanctions

The Debtor requests an award of "punitive damages in the amount of $10,000.00 per violation of law."[29] The viability and/or applicability of Section 106(a)(3) of the Bankruptcy Code is not clear. Section 106(a)(3), if viable and applicable, would prohibit the imposition of sanctions against Respondents. District Court case law is controlling and authorizes this Court to impose sanctions. The Court is authorized to impose additional sanctions pursuant to 11 U.S.C. Section 105(a) and its inherent powers.

Respondents have acted in bad faith. Their conduct has been egregious, contemptuous, and abusive. Additional sanctions of $25,000.00 are due to be imposed against Respondents, jointly and severally, pursuant to Section 362(h), Section 105(a) and the Court's inherent powers.

### Summary

The Debtor has established, by the preponderance of the evidence and by clear

29. Doc. No. 172, p. 8.

and convincing evidence, Respondents knowingly, intentionally, and repeatedly violated the automatic stay and the discharge injunction. He has established he is entitled to an award of actual damages and sanctions.

The Debtor is entitled to an award of actual damages totaling $42,622.00 against Respondents, jointly and severally, pursuant to the Court's statutory and inherent powers. This monetary award is necessary and appropriate to carry out the provisions of the Bankruptcy Code and to enforce the Orders of this Court. The purpose of the damages award is to compensate the Debtor for his injuries and to coerce Respondents' compliance with the bankruptcy laws.

Respondents' actions warrant the imposition of sanctions. An award of $25,000.00 against the Respondents, jointly and severally, is appropriate pursuant to the Court's statutory and inherent powers to redress the Respondents' contemptuous and bad faith conduct. The Court shall retain jurisdiction to enforce the provisions of this Order and to assess whether the imposition of additional sanctions may be appropriate.

### CONCLUSIONS OF LAW

■ The Debtor requests sanctions be imposed against Respondents pursuant to 11 U.S.C. Sections 105(a), 362(h), and 524(a) for their willful violations of the automatic stay of 11 U.S.C. Section 362(a) and the discharge injunction of 11 U.S.C. Section 524(a). He has the burden of proof to establish Respondents violated the automatic stay and the discharge injunction and that their violations were willful, as defined by the Eleventh Circuit. *Har-*

*dy v. I.R.S. (In re Hardy),* 97 F.3d 1384, 1390 (11th Cir.1996).

Bankruptcy Courts typically apply the preponderance of the evidence standard of proof in automatic stay and discharge violation matters, but some apply the clear and convincing standard of proof. *In re Caffey,* 384 B.R. 297, 304–305 (Bankr. S.D.Ala.2008); *see Grogan v. Garner,* 498 U.S. 279, 286, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (applying the preponderance of the evidence standard and explaining, "We are unpersuaded by the argument that the clear-and-convincing standard is required to effectuate the 'fresh start' policy of the Bankruptcy Code"); *but see Jove Eng'g, Inc. v. I.R.S. (In re Jove Eng'g, Inc.),* 92 F.3d 1539, 1545 (11th Cir.1996) (providing that "[a] finding of civil contempt must be based on 'clear and convincing evidence' that a court order was violated").

The Debtor has presented sufficient evidence to meet either standard. He has established Respondents knowingly, intentionally, and repeatedly violated the automatic stay and the discharge injunction. He has established he is entitled to an award of actual damages and sanctions.

### Governing Law

■ The Bankruptcy Code was extensively amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").[30] This case was commenced in 2002 and is governed by the pre-BAPCPA Bankruptcy Code.[31] The closing and reopening of this case did not bring this case within BAPCPA.

Respondents have put forth a number of arguments in opposition to the Motion for Sanctions, many of which are the same arguments presented by Florida DOR in litigation in the Chapter 13 case *In re*

---

30. Pub. L. No. 109–8, 119 Stat. 23 (April 20, 2005).

31. The BAPCPA amendments apply prospectively and not retroactively. *Id.* at § 1501(b)(1) (uncodified).

*Omine,* Case No. 6:01–bk–03306–KSJ, filed in this Court. The Bankruptcy Court found Florida DOR willfully and intentionally violated the automatic stay and awarded the debtors actual damages and sanctions. *In re Omine,* 329 B.R. 343, 350 (Bankr.M.D.Fla.2005).

The litigation involved appeals of Bankruptcy Court and District Court decisions, remands, and culminated with the entry of *Florida Dep't of Revenue v. Omine (In re Omine),* 485 F.3d 1305 (11th Cir.2007) by the Eleventh Circuit. The parties subsequently settled the matter and the Eleventh Circuit withdrew and vacated its decision. *In re Omine,* No. 06–11655–II, 2007 WL 6813797 (11th Cir. June 26, 2007).[32]

The District Court denied Florida DOR's motion to vacate its February 10, 2006 Order affirming the Bankruptcy Court's August 26, 2005 decision. *In re Omine,* No. 6:05–cv–1633–Orl–31DAB, 2007 WL 2126306 (M.D.Fla. July 23, 2007). The District Court's decision *Florida Dep't of Revenue v. Omine (In re Omine),* No. 6:05–cv–1633, 2006 WL 319162 (M.D.Fla. Feb.10, 2006) is controlling in this matter.

### Sovereign Immunity

■ Each state is required to adopt a child support enforcement program in compliance with Title IV–D of the Social Security Act. 42 U.S.C. §§ 651–665. Respondents are Title IV–D agencies and constitute state governmental units. Florida DOR is responsible for the administration of the Child Support Enforcement Program in Florida. FLA. STAT. § 409.2557(1), (2). Respondents are charged with cooperating with each other in the collection of child support and are co-enforcers of the Debtor's child support obligations. 42 U.S.C. § 654(9).

Sovereign immunity is not a factor in this proceeding. This matter involves Sections 105(a), 362, 502, 524, and 1327 of the Bankruptcy Code. Eleventh Amendment sovereign immunity is abrogated pursuant to 11 U.S.C. Section 106(a)(1). The Court may hear and determine any issue arising with respect to the application of such provisions of the Bankruptcy Code to Respondents. 11 U.S.C. § 106(a)(2).

Respondents voluntarily waived sovereign immunity pursuant to Section 106(b) of the Bankruptcy Code by filing Claim Nos. 3, 4, and 5:

> A governmental unit that has filed a proof of claim in the case is deemed to have waived sovereign immunity with respect to a claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which the claim of such governmental unit arose.

11 U.S.C. § 106(b). Respondents' waiver of sovereign immunity was express and unequivocal. *Wyoming Dep't of Transp. v. Straight (In re Straight),* 143 F.3d 1387, 1390 (10th Cir.1998). Respondents filed three claims in the Debtor's case. This sanctions matter involves property of the estate. *In re Omine,* 2006 WL 319162 at *6; *In re Omine,* 329 B.R. at 349. This sanctions matter involves the same child support debt Respondents sought to recover by filing the proofs of claim and which was fully paid and satisfied by the Debtor through his Plan. The Debtor's sanctions actions arise out of the same transaction or occurrence as the Respondents' proofs of claim. *State of Georgia Dep't of Revenue v. Burke (In re Burke),* 146 F.3d 1313, 1318 n. 10, 1319 (11th Cir.1998).

Respondents waived sovereign immunity by filing the claims. *Gardner v. State of N.J.,* 329 U.S. 565, 573–74, 67 S.Ct. 467, 91

---

**32.** The Debtor, as his post-hearing brief and in support of his Motion for Sanctions, submitted a copy of the Eleventh Circuit decision.

L.Ed. 504 (1947); *In re Burke*, 146 F.3d at 1319. "[T]his waiver includes the bankruptcy court's enforcement of the discharge injunction and the automatic stay." *In re Burke*, 146 F.3d at 1319.

### Applicability of 11 U.S.C. Section 106(a)(3)

■ Section 106(a)(3) prohibits the imposition of punitive damages against a governmental unit and restricts an award of attorneys' fees to a maximum hourly rate:

> The Court may issue against a governmental unit an order ... including an order or judgment awarding a money recovery, but not including an award of punitive damages. Such order or judgment for costs or fees ... shall be consistent with the provisions and limitations of section 2412(d)(2)(A) of title 28.

11 U.S.C. § 106(a)(3). Section 2412(d)(2)(A) of title 28 defines "fees and other expenses" for purposes of the EAJA and limits attorney's fee awards to $125.00 per hour.

The law is not clear as to whether Section 106(a)(3) remains viable or is applicable after the entry of *Georgia Higher Educ. Assistance Corp. v. Crow (In re Crow)*, 394 F.3d 918 (11th Cir.2004) and *Central Virginia Community College v. Katz*, 546 U.S. 356, 126 S.Ct. 990, 163 L.Ed.2d 945 (2006). *In re Omine*, 2006 WL 319162 at *5. The Eleventh Circuit ruled in *In re Crow* Section 106(a) was an unconstitutional attempt to abrogate state sovereign immunity. *In re Crow*, 394 F.3d

at 924. Section 106(a)(3) may not be viable if Section 106(a) has been judicially nullified.

The Supreme Court held in *Katz* the Bankruptcy Court had jurisdiction over the preference avoidance action brought against state governmental agencies. *Katz*, 546 U.S. at 378–79, 126 S.Ct. 990. It recast the sovereign immunity abrogation by statute issue as a Bankruptcy Clause constitutional issue: "In ratifying the Bankruptcy Clause, the States acquiesced in a subordination of whatever sovereign immunity they might otherwise have asserted in proceedings necessary to effectuate the *in rem* jurisdiction of the bankruptcy courts." *Id.*

The Supreme Court did not delineate what other proceedings involving governmental units a Bankruptcy Court may have jurisdiction over: "We do not mean to suggest that every law labeled a 'bankruptcy' law could, consistent with the Bankruptcy Clause, properly impinge upon state sovereign immunity." *Id.* at 378 n. 15, 126 S.Ct. 990.

The District Court in *In re Omine* affirmed the Bankruptcy Court's ruling that Section 106(a)(3), regardless of its viability, is not applicable in a stay violation action where the offending state governmental unit filed a proof of claim. *In re Omine*, 2006 WL 319162 at *5–6.[33] The District Court concluded, based upon the legislative history of Section 106:

---

**33.** The Eleventh Circuit, in its vacated *In re Omine* decision, found *Katz* is meant to have broad applicability because the Supreme Court did not limit the decision by delineating any "specific ancillary bankruptcy proceedings that remain subject to the States' Eleventh Amendment immunity." It held *Crow* was no longer good law based upon *Katz*. It affirmed the District Court's determination Florida DOR waived sovereign immunity, but held the award limitations of Section

106(a)(3) were applicable. Justice Black, in her dissenting opinion, concluded the award limitations of Section 106(a)(3) were inapplicable pursuant to *Katz* and would affirm the Bankruptcy Court's punitive damages and attorney fee awards. Alternatively, she would affirm the awards based upon Florida DOR's waiver of sovereign immunity by filing a proof of claim and the plain language of 11 U.S.C. Sections 362(h) and 105(a).

Congress intended for governments that filed proofs of claim to be treated like ordinary creditors in regard to those claims ... Only those governments that were dragged into court via abrogation of their sovereign immunity were to be treated like governments—immune from punitive damages and limited as to the attorney's fees and costs they (or their taxpayers) might be called upon to pay. *Id.* at \*6. Section 106(b) contains no prohibition on punitive damages or limitations on fee awards. Where sovereign immunity is waived pursuant to Section 106(b), a Bankruptcy Court may impose sanctions and award attorneys' fees and costs in accordance with the governing reasonableness standard. *Id.* at \*6; *In re Omine,* 329 B.R. at 348.

Respondents voluntarily waived sovereign immunity pursuant to Section 106(b) by filing their proofs of claim. They elected to be treated like any other creditor in regard to their claims. Section 106(a)(3) is not applicable to this matter. Respondents are not immune from sanctions and awards of attorneys' fees and costs are not limited to the EAJA hourly rate.

### Purpose of Chapter 13

■ The principal purpose of the Bankruptcy Code is to grant a "fresh start" to "the honest but unfortunate debtor." *Grogan,* 498 U.S. at 279, 111 S.Ct. 654. Chapter 13, entitled "Adjustment of Debts of an Individual With Regular Income" and derived from Chapter XIII of the Bankruptcy Act of 1938, was enacted by Congress in the Bankruptcy Reform Act of 1978, Public Law No. 95–598. Chapter 13 was designed to protect overextended individual wage earners desiring to voluntarily repay their debts through the automatic stay and provide financial relief through a fresh start.

Chapter 13 "facilitate[s] adjustments of the debts of individuals with regular income through flexible repayment plans funded primarily from future income." *Green Tree Acceptance, Inc. v. Hoggle (In re Hoggle),* 12 F.3d 1008, 1010 (11th Cir. 1994). The plan process permits " 'an individual to pay his debts and avoid bankruptcy by making periodic payments to a trustee under bankruptcy court protection, with the trustee fairly distributing the funds deposited to creditors until all debts have been paid.' " *U.S. v. Devall,* 704 F.2d 1513, 1515 (11th Cir.1983) (*quoting* S.Rep. No. 95–989, 95th Cong., 2d Sess. 12, *reprinted in* 1978 U.S.Code Cong. & Ad. News 5787, 5798).

■ The twin aims of bankruptcy are to provide "equitable distribution" of property of the estate, the res, to the creditors and a "fresh start" for the debtor "by releasing him, her, or it from further liability for old debts." *Katz,* 546 U.S. at 363–64, 126 S.Ct. 990. The Debtor utilized the bankruptcy process for its intended purposes—to resolve his creditors' claims through equitable distribution of his assets and to obtain a fresh start.

### Collateral Estoppel, Res Judicata, and Due Process

■ Respondents sought the benefits of the Chapter 13 bankruptcy process by filing their proofs of claim and are bound by the results. "[H]e who invokes the aid of the bankruptcy court by offering a proof of claim and demanding its allowance must abide the consequences of that procedure." *Gardner,* 329 U.S. at 573–74, 67 S.Ct. 467. "If a state desires to participate in the assets of a bankrupt, she must submit to appropriate requirements by the controlling power; otherwise, orderly and expeditious proceedings would be impossible." *New York v. Irving Trust Co.,* 288 U.S. 329, 332, 53 S.Ct. 389, 77 L.Ed. 815 (1933).

Respondents, displeased with the consequences of the bankruptcy process, are attempting in this sanctions proceeding to relitigate the Claim Objection, Plan confirmation, and the satisfaction of its allowed claim through the Debtor's fulfillment of the Plan. The doctrines of collateral estoppel and res judicata preclude the relitigation of these matters.

### Collateral Estoppel

■ The Debtor, as the party seeking to invoke the preclusive doctrines, has the burden to establish their elements. *Piper Aircraft Corp. v. Teledyne Indus., Inc. (In re Piper Aircraft Corp.)*, 244 F.3d 1289, 1296 (11th Cir.2001).

■ "Collateral estoppel, or issue preclusion, bars relitigation of an issue previously decided in judicial proceedings ... if the party against whom the prior decision is asserted had a 'full and fair opportunity' to litigate that issue in an earlier case." *St. Laurent v. Ambrose (In re St. Laurent)*, 991 F.2d 672, 675 (11th Cir.1993) *(citation omitted )*. The elements of collateral estoppel are:

(1) the issue at stake must be identical to the one decided in the prior litigation; (2) the issue must have been actually litigated in the prior proceeding; (3) the prior determination of the issue must have been a critical and necessary part of the judgment in that earlier decision; and (4) the standard of proof in the prior action must have been at least as stringent as the standard of proof in the later case.

*Id.* at 676.

The issues raised by Respondents are identical to the issues actually litigated and decided in the Debtor's bankruptcy case proceedings. The Debtor complied with Local Rules 2002–4 and 3007–1 in filing and serving the Claim Objection. Claim No. 5 was adjudicated to be an unsecured priority claim for $47,746.49 pursuant to the December 31, 2002 Order. Respondents had an allowed unsecured priority claim for $47,746.49. 11 U.S.C. § 502(b). Respondents had notice of the Claim Objection and the December 31, 2002 Order. They did not appear in the Claim Objection proceeding and did not contest the Claim Objection or the December 31, 2002 Order.

Subsequent case events turned upon the resolution of the Claim Objection. The adjudication of the Claim Objection was critical and necessary to the entry of the Confirmation Order, Plan completion, discharge, and the closing of the case. The Plan provided for payment in full of Respondents' allowed claim. The Plan met the requirements of 11 U.S.C. Section 1325 and was confirmed by the Confirmation Order.

Respondents were bound by the Plan pursuant to the Confirmation Order. 11 U.S.C. § 1327(a). Respondents received and accepted Plan disbursements totaling $47,746.49; their allowed claim was fully paid and satisfied. The Debtor was granted a discharge upon the completion of the Plan and the discharge injunction arose by operation of law. 11 U.S.C. §§ 1328(a); 524(a). All debts provided for by the Plan were discharged. 11 U.S.C. § 1328(a). The Discharge Order, Trustee's Final Report, April 11, 2006 Order approving the Final Report, and the closing of the case were unopposed.

The Debtor had the burden of proof in the Claim Objection and confirmation proceedings. He has the burden of proof in this sanctions proceeding. The standard of proof in the Claim Objection and confirmation proceedings is at least as stringent as the standard in the pending litigation.

Respondents had a full and fair opportunity to litigate the Claim Objection, confirmation of the Plan, discharge, the Trus-

tee's Final Report, and closing of the case. They did not oppose or participate in these proceedings. They were afforded due process. They are precluded from relitigating any of the issues relating to the Claim Objection and the consequences that flowed from the adjudication of that matter.

### Res Judicata

 Res judicata bars relitigation of matters decided in a prior proceeding if: (i) the prior decision was rendered by a court of competent jurisdiction; (ii) there was a final judgment on the merits; (iii) the parties were identical in both suits; and (iv) the prior and present causes of action are the same. *Citibank, N.A. v. Data Lease Fin. Corp.*, 904 F.2d 1498, 1501 (11th Cir.1990). "A final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979). " 'Privity' is a flexible legal term, comprising several different types of relationships and generally applying when a person, although not a party, has his interests adequately represented by someone with the same interests who is a party." *EEOC v. Pemco Aeroplex, Inc.*, 383 F.3d 1280, 1286 (11th Cir.2004).

 "When all of the requirements of claim preclusion are satisfied, 'the judgment or decree upon the merits in the first case is an absolute bar to the subsequent action or suit between the same parties ... not only in respect of every matter which was actually offered and received to sustain the demand, but also as to every [claim] which might have been presented.' " *Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.)*, 898 F.2d 1544, 1552 (11th Cir.1990) (*quoting Baltimore S.S. Co. v. Phillips*, 274 U.S. 316, 319, 47 S.Ct. 600, 71 L.Ed. 1069 (1927)).

The December 31, 2002 Order, Confirmation Order, Discharge Order, and Order Approving Trustee's Report all have res judicata effect. The Orders constitute prior judgments on the merits rendered by a Court of competent jurisdiction and were entered in accordance with due process. The parties involved in those Orders are identical to or in privity with the parties involved in this sanctions proceeding. The prior and present causes of action are the same, namely, claim allowance, confirmation of the Plan, Plan completion, and discharge.

Respondents are barred from relitigating every matter which was adjudicated by the Court, but also as to every claim or cause of action which might have been presented. *In re Justice Oaks II, Ltd.*, 898 F.2d at 1552. They are barred from relitigating the Claim Objection, confirmation, payment and satisfaction of its allowed claim, fulfillment of the Plan, discharge, the Trustee's Final Report, and the closing of the case. *Id.*

### Motion for Reconsideration

 The Court entered an Order on July 29, 2009 (Doc. No. 192) finding the attorney's fees and costs the Debtor incurred through his engagement of Joyner are relevant to the determination of the Motion for Sanctions and cause existed for reopening the evidence regarding such fees and costs. Respondents' Motion for Reconsideration of the July 29, 2009 Order is governed by Federal Rule of Civil Procedure 59(e), which is made applicable to bankruptcy proceedings through Federal Rule of Bankruptcy Procedure 9023. *In re Waczewski*, Case No. 6:06–bk–00620–KSJ, 2006 WL 1594141, at *4 (Bankr. M.D.Fla. May 5, 2006). The only grounds for granting a motion for reconsideration "are newly-discovered evidence or manifest errors of law or fact." *Kellogg v.*

*Schreiber (In re Kellogg),* 197 F.3d 1116, 1119 (11th Cir.1999).

▆ A trial court has discretion to reopen the evidence after both parties have rested. *Lundgren v. McDaniel,* 814 F.2d 600, 607 (11th Cir.1987). Cause existed for reopening the record and the Court exercised its discretion. Joyner's Affidavit filed pursuant to the July 29, 2009 Order constitutes evidence the Court may consider in this matter. *Id.*

Respondents assert any attorneys' fees sought by the Debtor are capped by the provisions of the EAJA pursuant to 11 U.S.C. Section 106(a)(3). Section 106(a)(3) is not applicable to this proceeding because Respondents filed claims thereby electing "to be treated like ordinary creditors in regard to those claims." *In re Omine,* 2006 WL 319162, at *5–6. Joyner's and Heinkel's fees are not subject to the EAJA cap and are to be evaluated on the standard reasonableness criteria.

Respondent have presented no newly-discovered evidence or manifest errors of law or fact warranting the reconsideration or amendment of the July 29, 2009 Order. Their Motion for Reconsideration is due to be denied.

### 11 U.S.C. Sections 362(a) and (b)

▆ The automatic stay of 11 U.S.C. Section 362(a) immediately arose on the Petition Date by operation of law enjoining:

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

. . .

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title.

11 U.S.C. § 362(a)(1), (a)(2), (a)(6). The automatic stay was in full force and effect from the Petition Date to the entry of the Discharge Order. 11 U.S.C. § 362(c)(3)(C). Respondents did not seek relief from the automatic stay.

Section 362(b) sets forth various exceptions to the automatic stay. The Debtor's filing of the petition did not operate as a stay "of the collection of alimony, maintenance, or support from property that is not property of the estate." 11 U.S.C. § 362(b)(2)(B). The Section 362(b)(2) exception "strikes a balance between the goals of protecting the bankruptcy estate from premature disbursement and protecting the spouse and children of the debtor." *Carver v. Carver,* 954 F.2d 1573, 1577 (11th Cir.1992). This exception is "very narrow" and "has little or no practical effect in Chapter 13 situations" because, given post-petition wages constitute property of the estate, little property exists from which a creditor can seek collection of arrearages while the stay is in effect. *Id.*

The filing of a bankruptcy petition creates an estate comprised of all of a debtor's legal and equitable interests in property. 11 U.S.C. § 541(a). Property of the estate in a Chapter 13 case includes, in addition to the property specified in Section 541, all Section 541 property acquired by a debtor post-petition and "earnings from services performed by the debtor

after the commencement of the case but before the case is closed, dismissed, or converted...." 11 U.S.C. § 1306(a). A Chapter 13 debtor, except as otherwise provided in a confirmed plan or confirmation order, remains in possession of all property of the estate. 11 U.S.C. § 1306(b).

■ All of the Debtor's legal and equitable interests in property and the earnings from services performed by him became property of the estate on the Petition Date. 11 U.S.C. §§ 541(a), 1306(a). The Debtor's income remained property of the estate post-confirmation. *Telfair v. First Union Mortgage Corp.*, 216 F.3d 1333, 1340 (11th Cir.2000).

Respondents issued two collection letters to the Debtor while the automatic stay was in effect. Their collection efforts were not aimed only at whatever assets the Debtor may have possessed, if any, that were not property of the estate. Their collection actions implicated property of the estate, including the Debtor's income, which was essential for funding his Plan. Respondents' attempts to collect the purported child support arrearage while the automatic stay was in effect were not insulated by the Section 362(b)(2) exception. *Id.*; *In re Omine*, 2006 WL 319162 at *6.

### Automatic Stay Violations

■ Three independent grounds exist for the imposition of actual damages and sanctions for automatic stay violations: 11 U.S.C. Section 362(h); 11 U.S.C. Section 105(a); and the Court's inherent powers. *In re Jove*, 92 F.3d at 1554. Section 362(h) provides:

An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appro-

priate circumstances, may recover punitive damages.

11 U.S.C. § 362(h).[34] "[T]he automatic stay is essentially a court-ordered injunction" and any entity that violates the stay may be found in contempt of court. *Carver*, 954 F.2d at 1578. Contempt sanctions may be imposed pursuant to 11 U.S.C. Section 105(a) and the Court's inherent powers. *In re Jove*, 92 F.3d at 1555. Section 105(a) provides:

The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

■ Bankruptcy Courts, in addition to their statutory contempt powers, have inherent contempt powers to sanction conduct "which abuses the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). Conduct abusive of the judicial process includes "bad faith conduct" and "willful disobedience of a court order." *Id.* at 45–46, 111 S.Ct. 2123. Bad faith conduct includes "hampering enforcement of a court order," and vexatious, wanton or oppressive conduct. *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir.1998) (*citation omitted*); *Glatter v. Mroz (In re Mroz)*, 65 F.3d 1567, 1575 (11th Cir.1995).

■ Sanctions are appropriate pursuant to Sections 362(h) and 105(a) where the stay violation was willful. 11 U.S.C. § 362(h); *In re Jove*, 92 F.3d at 1555. Sanctions are appropriate pursuant to the

---

**34.** Section 362(h) was repositioned by BAPC- PA as 11 U.S.C. Section 362(k).

Court's inherent powers where the stay violator acted in bad faith. *In re Mroz*, 65 F.3d at 1576.

A "willful violation" of the automatic stay occurs when the creditor "(1) knew the automatic stay was invoked and (2) intended the actions which violated the stay." *In re Jove*, 92 F.3d at 1555. Sanctions are warranted where a continuing violation of the automatic stay occurs after the creditor received notice of the bankruptcy case. *Matter of Maas*, 69 B.R. 245, 247 (Bankr.M.D.Fla.1986). The failure to remedy or undo a stay violation after receiving notice of a bankruptcy case constitutes a willful violation. *Id.*

Respondents had notice of the Debtor's bankruptcy case from its onset. They filed a Notice of Appearance early in the case, filed three claims, and appeared at the Debtor's initial confirmation hearing. They knew the automatic stay was in place when they issued the May 8, 2004 and September 23, 2004 collection letters. They knowingly and intentionally violated the automatic stay. They acted in bad faith. Respondents willfully violated the automatic stay and are in contempt of Court. *Jove*, 92 F.3d at 1555; *Maas*, 69 B.R. at 247.

The Debtor is entitled to an award of actual damages and sanctions pursuant to 11 U.S.C. Sections 362(h) and 105(a) and the Court's inherent powers.

### Discharge Injunction

The discharge injunction of 11 U.S.C. Section 524(a) automatically and immediately arose upon entry of the Debtor's discharge enjoining:

> ... the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived.

11 U.S.C. § 524(a)(2). Section 524 "embodies the 'fresh start' concept of the bankruptcy code." *In re Hardy*, 97 F.3d at 1388–89.

A child support debt is nondischargeable pursuant to 11 U.S.C. Section 523(a)(5), but Section 523(a)(5) does not insulate Respondents from the discharge injunction. Respondents submitted to the claim adjudication process by filing proofs of claim pursuant to 11 U.S.C. Section 501(a). Their claim was fixed at $47,746.49 pursuant to 11 U.S.C. Section 502(a). Their allowed claim was provided for in the Plan and was fully paid and satisfied. The debt was discharged pursuant to 11 U.S.C. Section 1328(a).

Bankruptcy Courts are empowered to award debtors actual damages and sanctions for violations of the Section 524 discharge injunction pursuant to their statutory contempt powers deriving from 11 U.S.C. Section 105. *In re Hardy*, 97 F.3d at 1389. A creditor may be held liable for contempt pursuant to Section 105(a) for willfully violating the permanent injunction of 11 U.S.C. Section 524. *Id.* at 1390. Conduct is willful regarding a discharge violation if the creditor: "1) knew that the discharge injunction was invoked and 2) intended the actions which violated the discharge injunction." *Id.* (applying the In re Jove test to § 524(a) violations).

The subjective beliefs or intent of the creditor are irrelevant. *Id.* at 1390; *In re Jove*, 92 F.3d at 1555. Receipt of notice of a debtor's discharge is sufficient to establish the knowledge element of the two-part test. *In re Hardy*, 97 F.3d at 1390.

### Discharge Injunction Violations

Respondents knew the discharge injunction of 11 U.S.C. Section 524(a) arose on November 29, 2005. The Debt-

or's discharge constitutes an order of this Court essential to the Debtor's fresh start. *In re Hardy,* 97 F.3d at 1388–89. Respondents had received and accepted Plan distributions of $47,746.49 and knew their allowed claim had been fully paid and satisfied.

Their post-discharge collection letters, driver's license suspension, entry of the Income Deduction Order, and interception, receipt, and retention of the income tax refunds constitute acts to collect or recover a discharged debt of the Debtor. Each day the Debtor's driver's license was suspended constitutes a separate violation. Respondents committed fifty-eight separate willful violations of the discharge injunction and their retention of the intercepted income tax refunds constitute ongoing violations of the discharge injunction.

Respondents' repeated failures to honor the discharge injunction were intentional, egregious, and extreme. They acted in bad faith. Their conduct was vexatious, wanton, and oppressive. Respondents willfully violated and are in contempt of the Discharge Order, December 31, 2002, March 27, 2003, and April 11, 2006 Orders. 11 U.S.C. §§ 524(a), 105(a); *In re Hardy,* 97 F.3d at 1390.

The Debtor is entitled to an award of actual damages and sanctions pursuant to 11 U.S.C. Sections 524(a) and 105(a) and the Court's inherent powers.

### Actual Damages

The Debtor has suffered actual damages as a direct result of Respondents' willful stay and discharge violations and contemptuous actions. The Debtor is entitled to an award of actual damages pursuant the Court's statutory powers. 11 U.S.C. §§ 362(h), 105(a); *In re Hardy,* 97 F.3d at 1389. He is entitled to an award of actual damages pursuant to the Court's inherent powers. *Chambers,* 501 U.S. at 44–45, 111

S.Ct. 2123; *Barnes v. Dalton,* 158 F.3d at 1214; *In re Mroz,* 65 F.3d at 1575.

### Significant Aggravation, Emotional Distress, Inconvenience

Respondents caused the Debtor to suffer significant aggravation, emotional distress, and inconvenience each time it violated the automatic stay and the discharge injunction.

 Emotional distress constitutes actual damages. *In re Nibbelink,* 403 B.R. 113, 120–21 (Bankr.M.D.Fla.2009). Emotional distress is expected to occur where the conduct is egregious or extreme. *Id.* at 120. Significant emotional distress is readily apparent where the conduct is egregious and corroborating medical evidence is not required. *Dawson v. Washington Mut. Bank, F.A. (In re Dawson),* 390 F.3d 1139, 1150 (9th Cir.2004). Entitlement to emotional distress damages exists "even in the absence of an egregious violation, if the individual in fact suffered significant emotional harm and the circumstances surrounding the violation make it obvious that a reasonable person would suffer significant emotional harm." *Id.* at 1151.

 The Debtor's emotional distress, aggravation, and inconvenience are readily apparent due to Respondents' intentional, egregious, and extreme conduct. He is not required to present corroborating medical evidence. *In re Nibbelink,* 403 B.R. at 120; *In re Dawson,* 390 F.3d at 1150–51. The Debtor is entitled to actual damages for significant emotional distress, aggravation, and inconvenience in the amount of $29,500.00.

### Attorneys' Fees and Intercepted Tax Refunds

 Attorneys' fees and costs constitute actual damages that may be awarded

to the Debtor pursuant to the reasonableness criteria of 11 U.S.C. Section 330(a) and *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–718 (5th Cir. 1974).[35] *In re Omine,* 2006 WL 319162 at *6; *In re Omine,* 329 B.R. at 349; *In re Nibbelink,* 403 B.R. at 122.

The Debtor incurred attorneys' fees and costs as a direct result of Respondents' actions. He incurred attorney's fees of $6,195.00 and costs of $45.00 for services provided by Joyner and attorney's fees of $2,000.00 for services provided by Heinkel. The fees and costs are reasonable after consideration of the *Johnson* factors.

Respondents caused the IRS to intercept and remit to Respondents the Debtor's income tax refunds of $604.35 in July 2008 and $4,277.65 in May 2009. The Debtor is entitled to an award of total actual damages of $42,622.00 pursuant to the Court's statutory and inherent contempt powers.

### Sanctions

■ Respondents' actions warrant the imposition of sanctions. Its actions were knowing and intentional and egregious. It willfully and repeatedly violated the automatic stay, the Debtor's discharge, and numerous Orders of this Court. This Court is authorized to impose sanctions against Respondents pursuant to 11 U.S.C. Section 362(h), 11 U.S.C. Section 105(a), and the Court's inherent powers. Section 106(a)(3) of the Bankruptcy Code is inapplicable. *In re Omine,* 2006 WL 319162 at *6.

Sanctions of $25,000.00 are due to be imposed against Respondents. The sanctions award is necessary and appropriate to enforce the provisions of the Bankruptcy Code, to coerce Respondents' compliance with the bankruptcy laws, and to redress Respondents' wrongful actions.

### Conclusion

"The very purpose of sovereign immunity is to avoid subjecting a foreign sovereign to the rigors and 'inconvenience of suit.'" *Powerex Corp. v. Reliant Energy Servs., Inc.,* 551 U.S. 224, 242, 127 S.Ct. 2411, 168 L.Ed.2d 112 (2007) (*citation omitted*). Respondents voluntarily waived their Eleventh Amendment sovereign immunity by electing to participate in the Debtor's bankruptcy case. They sought the benefits of the bankruptcy process and subjected themselves to the jurisdiction of this Court by filing three proofs of claim.

Respondents elected to be treated like any other creditor in the bankruptcy process. They were entitled to receive the benefits of the bankruptcy process and were required to abide by the rules. They have received the benefits of the bankruptcy process, but have refused to comply with the rules.

They filed Claim No. 5 asserting the Debtor owed Respondents $67,047.45. The claim was unsubstantiated and at vari-

---

**35.** The twelve *Johnson* factors are:
(1) the time and labor required;
(2) the novelty and difficulty of the questions involved;
(3) the skill requisite to perform the legal service properly;
(4) the preclusion of other employment by the attorney due to acceptance of the case;
(5) the customary fee;
(6) whether the fee is fixed or contingent;
(7) time limitations imposed by the client or the circumstances;
(8) the amount involved and the results obtained;
(9) the experience, reputation, and ability of the attorneys;
(10) the "undesirability" of the case;
(11) the nature and the length of the professional relationship with the client;
(12) awards in similar cases.
*Johnson,* 488 F.2d at 714.

ance with the debt total of $47,746.49 contained in Respondents' account statement. The Debtor exercised his right to challenge the claim. Respondents, despite having notice of the claim objection, did not respond. Respondents' counsel could have addressed the matter at the initial confirmation hearing, but did not.

Respondents were adjudicated to have an allowed claim of $47,746.49 pursuant to the December 31, 2002 Order. The allowed claim amount of $47,746.49 was not an arbitrary figure, but was based upon the Respondents' account statement. Respondents did not contest or appeal the December 31, 2002 Order. They did not contest or appeal any subsequent Orders including the Confirmation Order, Discharge Order, or the Order approving the Trustee's Final Report. They received and accepted Plan distributions of $47,746.49 on their allowed claim, with no objection. Their allowed claim was fully paid and satisfied through the Plan. The debt was discharged and they are permanently enjoined from attempting to collect the discharged debt from the Debtor.

Respondents, throughout the Debtor's bankruptcy case and post-discharge, have steadfastly refused to comply with the rules. They have flagrantly ignored and violated fundamental bankruptcy laws and the Orders of this Court. The Debtor's filing of the Motion for Sanctions did not curtail their contemptuous and bad faith conduct.

Respondents are bound by the consequences of their election to participate in the Debtor's bankruptcy case. They refuse to accept the consequences of their election. They have undermined the core precepts of the bankruptcy process and have damaged the Debtor. The magnitude of their transgressions warrants the imposition of sanctions.

Accordingly, it is

**ORDERED, ADJUDGED and DECREED** that the Respondents' Motion to Strike Supplement (Doc. No. 188) and Motion for Reconsideration (Doc. No. 195) are hereby **DENIED;** and it is further

**ORDERED, ADJUDGED and DECREED** the Debtor's Motion for Sanctions (Doc. No. 172) and Supplement to Motion for Sanctions (Doc. No. 187) are hereby **GRANTED;** and it is further

**ORDERED, ADJUDGED and DECREED** that Respondents willfully violated the automatic stay of 11 U.S.C. Section 362(a), the Debtor's discharge injunction of 11 U.S.C. Section 524(a), and are in contempt of numerous Orders of this Court, and an award of actual damages of $42,622.00 and sanctions of $25,000.00 are necessary and appropriate pursuant to 11 U.S.C. Sections 105(a), 362(h), 524(a), and the Court's inherent powers; and it is further

**ORDERED, ADJUDGED and DECREED** that, pursuant to 11 U.S.C. Sections 362(h), 524(a), 105(a) and the Court's inherent powers, damages and sanctions totaling $67,622.00 are hereby awarded to the Debtor and against Respondents, jointly and severally; and it is further

**ORDERED, ADJUDGED and DECREED** that Respondents are hereby enjoined pursuant to 11 U.S.C. Sections 524(a) and 105(a) from taking any further collection action with respect to the discharged debt; and it is further

**ORDERED, ADJUDGED and DECREED** that the Court retains jurisdiction to enforce the provisions of this Order and to assess whether the imposition of additional sanctions may be appropriate.

A separate Judgment consistent with these findings and rulings shall be entered contemporaneously.

## *JUDGMENT*

This matter came before the Court on the Motion for Sanctions (Doc. No. 172) and the Supplement to Debtor's Motion for Sanctions (Doc. No. 187) filed by the Debtor Miguel A. Diaz, a/k/a Miguel A. Diaz–Collado, against the Florida Department of Revenue and the Commonwealth of Virginia Department of Social Services. Evidentiary hearings were held on January 21, April 1, and June 29, 2009. After reviewing the pleadings and evidence, hearing live testimony and argument, and in conformity with and pursuant to the **Memorandum Opinion** entered contemporaneously herewith, it is

**ORDERED, ADJUDGED and DECREED** that **JUDGMENT** in the amount of $67,622.00 is hereby entered, pursuant to 11 U.S.C. Sections 362(h), 524, 105(a), and the Court's inherent powers, in favor of the Debtor Miguel A. Diaz and against the Florida Department of Revenue and the Commonwealth of Virginia Department of Social Services, jointly and severally; and it is further

**ORDERED, ADJUDGED and DECREED** that for the foregoing sums let execution issue.